NUMBER 13-08-00665-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

PHILLIP LUMPKINS A/K/A PHILLIP LUMPKIMS, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 28th District Court of

Nueces County, Texas.

 
MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Chief Justice Valdez
 After a bench trial, appellant, Phillip Lumpkins (a/k/a Phillip Lumpkims), was
convicted of the offense of aggravated perjury, a third-degree felony, and sentenced to two
years' confinement. See Tex. Penal Code Ann. § 37.03 (Vernon 2003). In a single issue,
Lumpkins challenges the legal and factual sufficiency of the evidence supporting his
conviction. We affirm. 


I. Background

 Lumpkins was indicted for the offense of aggravated perjury because he allegedly
gave false testimony before a jury during the guilt/innocence phase of a trial where he was
defending charges of unauthorized use of a motor vehicle and evading arrest. During the
guilt/innocence phase of that trial, Lumpkins answered his counsel's questions as follows:

Defense Counsel: Were you the person that took the [Corpus Christi] egg
truck . . . ?


Lumpkins: No, I don't know anything about the truck.


Defense Counsel: Okay. And you weren't driving the truck?


Lumpkins: No, I wasn't driving the truck.


Defense Counsel: And you didn't run it into the--the mound of dirt at the
construction site?


Lumpkins: No.


A jury convicted Lumpkins of unauthorized use of a motor vehicle and evading arrest, and
at the punishment phase, on cross-examination by the State, Lumpkins was asked:

State: So you lied to the jury that you didn't take that truck?


 . . . .


Lumpkins: Your Honor--yeah, I took the truck, Your Honor. Yeah, I took
the truck. I have to admit it, you know. I apologize to the Court
and to my lawyer, but I really didn't think anybody would
believe me anyway. I thought we was just going through the
process of defending [myself] because I got a right to defend
myself, you know.


Lumpkins was sentenced to two concurrent terms of confinement for one year.

 At Lumpkins's trial for aggravated perjury, the trial court admitted the reporter's
record from the previous trial and affidavits from the prosecutor and court reporter in the
previous case. The trial court also heard arguments from counsel. It then found Lumpkins
guilty and sentenced him to two years' confinement, to run concurrently with the two terms
of confinement that he was previously sentenced to serve. This appeal ensued.

II. Discussion

 In a single issue, Lumpkins challenges the legal and factual sufficiency of the
evidence supporting his conviction. We will briefly outline the standard of review, construe
the applicable statute, and analyze Lumpkins's issue.

A. Standard of Review

 In conducting a legal sufficiency review, we view the relevant evidence in the light
most favorable to the verdict to determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19
(1979)); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact
is the sole judge of the facts, the credibility of the witnesses, and the weight given to
testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Beckham v. State,
29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). We do not
reevaluate the weight and credibility of the evidence, and we do not substitute our own
judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000);
Beckham, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational
decision. Beckham, 29 S.W.3d at 151.

 When conducting a factual sufficiency review, we view all of the evidence in a
neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will set the
verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and preponderance of the
evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first
prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or "manifestly
unjust" simply because, on the quantum of evidence admitted, we would have voted to
acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 416 (Tex. Crim. App.
2006). Under the second prong of Johnson, we cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the jury's resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict under
the second prong of Johnson, we must be able to say, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the jury's
verdict. Id. In conducting a factual sufficiency review, we must also discuss the evidence
that, according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Applicable Law

 A person commits the offense of perjury, if, with intent to deceive and with
knowledge of the statement's meaning, he makes a false statement under oath or swears
to the truth of a false statement previously made and the statement is required or
authorized by law to be made under oath. Tex. Penal Code Ann. § 37.02(a)(1) (Vernon
2003). A person commits the offense of aggravated perjury, if he commits perjury and the
false statement is made during or in connection with an official proceeding and is material. 
Id. § 37.03. A person may defend a charge of aggravated perjury by claiming that he
retracted the false statement before completion of the testimony at the official proceeding
and before it became manifest that the falsity of the statement would be exposed. Id. §
37.05 (Vernon 2003).

C. Analysis

 In his sufficiency challenge, Lumpkins contends that he established the defense of
retraction as a matter of law because the phrase "official proceeding," as it is used in the
aggravated perjury and retraction sections of the penal code, encompasses both the
guilt/innocence and punishment phases of trial. Specifically, Lumpkins argues that his
punishment-phase retraction of statements made during the guilt/innocence phase of trial
occurred during the same "official proceeding" and that his reading of the statute, as
applied to the facts of this case, mandated an acquittal. 

 Lumpkins's sufficiency challenge turns on whether the guilt/innocence phase of a
criminal trial is a separate "official proceeding" or only a "phase" of a single "official
proceeding." The code of criminal procedure, case law, and a plain-text reading of the
applicable penal code sections militate against Lumpkins's view that the guilt/innocence
phase of trial is only a part of one single official proceeding. 

 First, the code of criminal procedure provides for a bifurcated jury trial by stating
that:

In all criminal cases, other than misdemeanor cases of which the justice
court or municipal court has jurisdiction, which are tried before a jury on a
plea of not guilty, the judge shall, before argument begins, first submit to the
jury the issue of guilt or innocence of the defendant of the offense or
offenses charged, without authorizing the jury to pass upon the punishment
to be imposed. 


See Tex. Code Crim. Proce Ann. art. 37.07, §2(a) (Vernon Supp. 2008). 

 Second, the court of criminal appeals has interpreted article 37.07 as providing for
"two separate proceedings." See Brumfield v. State, 445 S.W.2d 732, 741 (Tex. Crim.
App. 1969) (plurality op. on reh'g). In Brumfield, the court discussed whether the State
could recall, over defense counsel's objection, a defendant who had voluntarily testified at
the guilt/innocence phase of trial for "further cross-examination" at the punishment phase. 
Id. at 734. The court noted that if article 37.07 "can be interpreted as providing two
separate proceedings[,] then it follows that a defendant's waiver of his privilege against
self-incrimination by taking the stand at the guilt stage is limited to that particular
proceeding." Id. (1) 

 Third, although Black's Law Dictionary does not define "official proceeding," it
defines "judicial proceeding" as "any court proceeding; any proceeding initiated to procure
an order or decree, whether in law or in equity." See Black's Law Dictionary 1324 (9th
ed. 2009). Additionally, "criminal proceeding" is defined as "a proceeding instituted to
determine a person's guilt or innocence or to set a convicted person's punishment; a
criminal hearing or trial." Id. In defining "official proceeding" under the "fair import of its
terms" standard, we conclude that it applies separately to the guilt/innocence and
punishment phases of trial in a court of record. See generally, Tex. Penal Code Ann. §
1.05(a) (Vernon 2003) (providing that words and phrases in the penal code should be
construed "according to the fair import of [its] terms, to promote justice and effect the
objectives of the [penal] code.").

 Finally, our construction of the phrase "official proceeding" is buttressed by dicta in
Vaughn v. State, 931 S.W.2d 564, 567 (Tex. Crim. App. 1996) (en banc) (per curiam). In
Vaughn, the defendant, who was indicted for the offense of aggravated assault, testified
at both the guilt/innocence and punishment phases of a jury trial. Id. at 565. The
defendant's guilt/innocence-phase testimony raised the issues of self-defense and defense
of a third-party. Id. The jury rendered a guilty verdict. Id. At punishment, the State asked
the defendant if she accepted the jury's verdict and was willing to admit to the members
of the jury that the verison of the facts that they believed, as evidenced by the guilty verdict,
was true. Id. The defendant refused to do so. Id. During its closing argument, the State
urged a harsh sentence because the defendant refused to accept responsibility for the
attack. Id. Defense counsel did not object to either the State's line of questioning or the
closing argument. Id. On appeal, the defendant asserted that she had been rendered
ineffective assistance of counsel. Id. The court of criminal appeals overruled the
ineffective assistance of counsel issue, and, in dicta, stated:

A defendant's right to take the stand at the guilt phase of trial and testify in
his own behalf does not insulate him from being prosecuted for perjury if he
lies in some material way while on the stand. We know of nothing in the
Constitution to prevent such a prosecution. A defendant deciding whether
to take the stand at the punishment phase of trial is simply confronted with
more momentous consequences than the vague threat of a perjury
prosecution. Indeed, if a defendant gives testimony at punishment which is
inconsistent with testimony given at the guilt phase of the same trial, he has
provided the State with evidence constituting a prima facie case of
aggravated perjury against the defendant. 


Id. at 565 (citing Tex. Penal Code Ann. §§ 37.03, 37.06 (Vernon 2003)).

 Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact, in this case the trial court, could have found beyond a reasonable
doubt that Lumpkins committed the offense of aggravated prejury. See Hooper, 214
S.W.3d at 13. Viewing the evidence in a neutral light, we further conclude that the
evidence is not so weak that the trial court's verdict seems clearly wrong and manifestly
unjust, and that the trial court's verdict is not against the great weight and preponderance
of the evidence. Watson, 204 S.W.3d at 414-15. We conclude that the evidence is legally
and factually sufficient to support Lumpkins's conviction and overrule his sole issue.III. Conclusion

 We affirm the trial court's judgment.

 ________________________

 ROGELIO VALDEZ

 Chief Justice

 

Do Not Publish. Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and filed 

this the 1st day of October, 2009. 
1. Brumfield's holding was later embraced by a majority of the court in Beathard v. State, 767 S.W.2d
423, 432 (Tex. Crim. App. 1989).